IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JDS CONSTRUCTION, LLC, ) | Civ. No. 18-00147 SOM-KSC |
| ) | |
| Plaintiff, ) | ORDER GRANTING DEFENDANT |
| ) | JACOBSEN CONSTRUCTION |
| vs. ) | COMPANY, INC.'S MOTION TO |
| ) | DISMISS THIRD-PARTY DEFENDANT |
| JACOBSEN CONSTRUCTION ) | JAMES D. ARTHUR'S |
| COMPANY, INC.; FIDELITY & ) | COUNTERCLAIM |
| DEPOSIT COMPANY OF MARYLAND, ) | |
| INC.; LIBERTY MUTUAL ) | |
| INSURANCE COMPANY, INC.; JOHN ) | |
| and JANE DOES 1-50; DOE ) | |
| CORPORATIONS 1-50; and DOE ) | |
| ENTITIES 1-50, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |
| ) | |
| JACOBSEN CONSTRUCTION ) | |
| COMPANY, INC., ) | |
| ) | |
| Third-Party ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| JAMES D. ARTHUR, ) | |
| ) | |
| Third-Party ) | |
| Defendant. ) | |
| _____ ) | |

**ORDER GRANTING DEFENDANT JACOBSEN CONSTRUCTION COMPANY, INC.'S MOTION
TO DISMISS THIRD-PARTY DEFENDANT JAMES D. ARTHUR'S COUNTERCLAIM**

**I.      INTRODUCTION.**

        Before this court is a motion filed by Defendant

Jacobsen Construction Company, Inc. ("Jacobsen"), seeking

dismissal of the Counterclaim filed by Third-Party Defendant

James D. Arthur ("Arthur").  Jacobsen contends that the

Counterclaim fails to state a claim upon which relief can be granted. ECF No. 30. In the alternative, Jacobsen seeks a more definite statement. *See id.* Finding that Arthur fails to allege a viable claim, the court grants Jacobsen's motion and dismisses Arthur's Counterclaim with leave to amend.

II.     **BACKGROUND.**

This case arises out of a construction project ("Project") for the Culinary Institute of the Pacific at Kapiolani Community College. *See* ECF No. 5-1, PageID # 29. Jacobsen was the general contractor for the Project and hired JDS Construction, LCC ("JDS"), as a subcontractor. *Id*. Arthur is JDS's CEO. ECF No. 5-2, PageID # 33. The Project appears to have been completed in April 2017. *See* ECF No. 5-1, PageID # 31.

On March 13, 2018, JDS filed a Complaint in state court against Jacobsen, asserting breach of contract and quantum meruit claims.[1] *See id.* at 29-32. The Complaint alleges that Jacobsen breached a Master Subcontract Agreement dated April 28, 2015, by unreasonably withholding payments to JDS despite JDS's completion of all required work on the Project. *See id.* at 29-30. The Complaint also alleges that JDS "repeatedly received

---

[1] The Complaint also names as defendants Fidelity & Deposit Company of Maryland, Inc., Liberty Mutual Insurance Company, Inc., and various Doe defendants. The claims against these defendants are not discussed in this order because they are irrelevant to the motion at issue.

notice of [delays in the work schedule] in an untimely manner,
only after labor, materials and equipment had already been
ordered and could not be canceled" and that Jacobsen should pay
for the expenses incurred as a result of the delays.  *See id.* at
31.  On April 20, 2018, the case was removed to federal court on
the basis of diversity jurisdiction.  ECF No. 1.

On July 20, 2018, Jacobson filed a Third-Party
Complaint against Arthur.[2]  ECF No. 15.  The Third-Party
Complaint alleges that Arthur executed the Master Subcontract
Agreement[3] "as the CEO of JDS and also as a personal Guarantor,"
and that Arthur represented to Jacobsen that both JDS and Arthur
were "properly licensed as contractors in the State of Hawaii to
perform the work provided for under the Contract."  *Id.*, PageID
# 134.  It argues that JDS breached the Master Subcontract
Agreement in several ways, including by failing to maintain its
contractor's license, and that "Arthur, as Guarantor under the
Subcontract, is jointly and severally liable with JDS for all
damages arising out of the Subcontract."  *Id.* at 137.

---

[2] On July 13, 2018, Jacobsen filed its Answer and Counterclaim
against JDS.  ECF No. 14.  Its Counterclaim against JDS is
almost identical to the Third-Party Complaint against Arthur.

[3] In addition to referring to the Master Subcontractor Agreement,
Jacobsen's Third Party Complaint refers to a Subcontract Work
Order No. 13216-01 dated June 4, 2015, which Jacobsen asserts
"fully incorporates the [Master Subcontract Agreement] by
reference."  *See* ECF No. 15, PageID # 134.

Arthur filed an Answer and Counterclaim against

Jacobsen on August 27, 2018.  ECF No. 26.  The Counterclaim

states in full:

> 32. [Arthur] asserts that [Jacobsen] interfered with his contractual relations with [Arthur's] second-tier subcontractors and suppliers for the University of Hawaii, Kapiolani Community College, Culinary project ("Project").  [Jacobsen's] refusal to make timely payment and reliance on stalling tactics as evidenced by Attorney Ogawa's May 11, 2017 letter on behalf of [Jacobsen], served to interfere with [Arthur's] contractual relations with his second-tier subcontractors and suppliers for the Project.
>
> 33. [Arthur] asserts that [Jacobsen's] conduct in refusing to make timely payment and reliance on stalling tactics amounts to unfair competition as it adversely affected [Arthur's] ability to obtain services and supplies from his second-tier subcontractors and suppliers for work required on his other projects.
>
> 34. [Arthur] alleges he sustained damages to be proven at Trial due to [Jacobsen's] breach of the implied covenant of good faith in all its contractual dealings with all of its subcontractors, second-tier subcontractors and suppliers for the Project.
>
> 35. [Arthur] had no control over making payments to his second-tier contractors and suppliers after [Jacobsen] unilaterally stopped payments to [Arthur's] second-tier subcontractors and suppliers for the Project.

*See id.*, PageID #s 228-29.

On September 17, 2018, Jacobsen filed the present motion to dismiss.  ECF No. 30.  Jacobsen asks this court to dismiss Arthur's Counterclaim under Rule 12(b)(6) or, in the alternative, to order Arthur to provide a more definite statement under Rule 12(e).  *See* ECF No. 30-1, PageID # 262.

Arthur's opposition to Jacobsen's motion to dismiss was due on November 12, 2018.  No timely opposition was filed, and the court informed the parties that it would decide the motion without a hearing.  Several days later, on November 29, 2018, Arthur filed his opposition with no explanation for his tardiness.  *See* ECF No. 37.  The court disregards the opposition as untimely.  *See* Local Rule 7.4 ("Any opposition or reply that is untimely filed may be disregarded by the court or stricken from the record.").

The court notes in any event that Arthur's opposition is primarily a declaration that seeks to add factual background to the challenged Counterclaim.  While the declaration includes references to some material (such as a Certificate of Occupancy) that this court could, in its discretion, take judicial notice of, most of the allegations the declaration seeks to have the court consider go outside the issue of the sufficiency of Arthur's pleading and would require conversion of the motion to dismiss to a motion for summary judgment.  That provides an additional reason this court disregards the tardy opposition.

**III.     STANDARDS OF REVIEW.**

 **A.     Rule 12(b)(6) Motion to Dismiss.**

Under Rule 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief can be granted.  The court's review is generally limited to the contents of a complaint.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Campanelli v. Bockrath*, 100 F.3d 1476, 1479 (9th Cir. 1996).  If matters outside the pleadings are considered, the Rule 12(b)(6) motion is treated as one for summary judgment.  *Keams v. Tempe Tech. Inst., Inc.*, 110 F.3d 44, 46 (9th Cir. 1997); *Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir. 1996).  However, the court may take judicial notice of and consider matters of public record without converting a Rule 12(b)(6) motion to dismiss into a motion for summary judgment. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001); *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1198 (9th Cir. 1988).

On a Rule 12(b)(6) motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.  *Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1207 (9th Cir. 1996).  However, conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss.  *Sprewell*, 266 F.3d at 988;

*Syntex Corp. Sec. Litig.*, 95 F.3d 922, 926 (9th Cir. 1996).

Dismissal under Rule 12(b)(6) may be based on either "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988) (citing *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984)).

To survive a Rule 12(b)(6) motion to dismiss, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he pleading standard . . . does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." (internal quotation marks omitted)). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks omitted). A complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged."
*Iqbal*, 556 U.S. at 678.

### B.    Rule 12(e) Motion for a More Definite Statement.

Rule 12(e) permits a party to move for a more definite statement when a complaint is so "vague or ambiguous that the party cannot reasonably prepare a response."  A plaintiff's complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and each allegation must "be simple, concise, and direct."  Fed. R. Civ. P. 8(b), (e).  However, "[o]ur system of notice pleading 'does not require a claimant to set out in detail the facts upon which he bases his claim.'"  *Yamaguchi v. U.S. Dep't of the Air Force*, 109 F.3d 1475, 1481 (9th Cir. 1997) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

## IV.    ANALYSIS.

Arthur's Counterclaim appears to assert three claims: tortious interference with contractual relations ("Count I"), unfair competition ("Count II"), and breach of the implied covenant of good faith ("Count III").  Because Arthur fails to sufficiently plead any of these claims, the court grants Jacobsen's motion under Rule 12(b)(6) and dismisses the Counterclaim with leave to amend.  The dismissal makes it unnecessary for this court to address Jacobsen's alternative motion for a more definite statement.

**A.  Count I (Tortious Interference with Contractual Relations).**

Count I of the Counterclaim asserts that Jacobsen's "refusal to make timely payment and reliance on stalling tactics as evidenced by Attorney Ogawa's May 11, 2017 letter" interfered with his contractual relations with "second-tier subcontractors and suppliers" for the Project.  *See* ECF No. 26, PageID # 228. The letter of May 11, 2017, is not attached to the Counterclaim.

The elements of tortious interference with contractual relations are: "(1) a contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional inducement of a third party to breach the contract; (4) the absence of justification on the defendant's part; (5) a breach of the contract by the third party; and (6) damages to the plaintiff."  *Lee v. Aiu*, 85 Haw. 19, 33, 936 P.2d 655, 668 (1997) (quoting *Weinberg v. Mauch*, 78 Haw. 40, 50, 890 P.2d 277, 287 (1995)).  Arthur does not sufficiently plead facts supporting any element of this claim.

First, Arthur broadly states that he has "contractual relations with [] second-tier subcontractors and suppliers for the Project," but fails to identify these contracts or the contracting parties.  Without any means to identify the contractual relations at issue or the subcontractors or suppliers, Jacobsen is left to speculate as to the actual facts

underlying this claim.  *See Twombly*, 550 U.S. at 545 ("Factual

allegations must be enough to raise a right to relief above the

speculative level on the assumption that all of the complaint's

allegations are true.").

Second, nowhere does Arthur allege facts indicating

that Jacobsen knew anything about Arthur's contracts with

second-tier subcontractors and suppliers.  *See Gold Refinery,

LLC v. Aloha Island Gold, LLC*, Civ. No. 11-00522 SOM-RLP, 2012

WL 518396, at *10 (D. Haw. Feb. 15, 2012) ("Without factual

allegations, [a plaintiff] does not state a claim.").

Third, the Counterclaim fails to allege facts going to

whether Jacobsen "acted with intent and legal malice" to harm

Arthur.  *Meridian Mortg., Inc. v. First Hawaiian Bank*, 109 Haw.

35, 45–46, 122 P.3d 1133, 1143-44 (Ct. App. 2005) (internal

citations and italics omitted).  Arthur states that Jacobsen

refused to make timely payments, but untimely payments, without

any allegation of intent, do not denote any "purposefully

improper interference" with Arthur's other contracts.  *Bodell

Constr. Co. v. Ohio Pac. Tech, Inc.*, 458 F. Supp. 2d 1153, 1165

(D. Haw. 2006).

Fourth, Arthur fails to allege facts suggesting that

Jacobsen acted without proper justification.  Arthur states that

Jacobsen's "refusal to make timely payment . . . served to

interfere" with his contractual relations, but he does not

allege facts suggesting, for example, that Jacobsen acted illegally or breached any contract.

The Counterclaim is devoid of any factual allegation relating to the final two elements of a claim of tortious interference with contractual relations.  Arthur does not allege either a breach of contract by a third party or any damages suffered as a result of Jacobsen's alleged interference.

The court dismisses Count I for failure to state a claim that, in the absence of factual allegations, is plausible on its face.

### B.   Count II (Unfair Competition).

Arthur asserts that Jacobsen's "refus[al] to make timely payment and reliance on stalling tactics amounts to unfair competition" because Jacobsen's conduct "adversely affected [Arthur's] ability to obtain services and supplies from his second-tier subcontractors and suppliers for work required on his other projects."  ECF No. 26, PageID # 229.

Arthur does not specify whether his unfair competition claim is brought under Hawaii common law or Hawaii statute. Unfair competition under Hawaii common law "is a limited concept" that "[p]rimarily, and strictly, . . . relates to the palming off of one's goods as those of a rival trader."  *Meridian Mortg.*, 109 Haw. at 49, 122 P.3d at 1147.  As Arthur in no way suggests that

11

Jacobsen copied or misappropriated any product,[4] the court

assumes that Arthur is attempting to bring a claim under Hawaii

Revised Statute § 480-2, Hawaii's statute on unfair methods of

competition.

Section 480-2 provides that "[u]nfair methods of

competition and unfair or deceptive acts or practices in the

conduct of any trade or commerce are unlawful."  Haw. Rev. Stat.

§ 480-2(a).  A practice is unfair "when it offends established

public policy and when the practice is immoral, unethical,

oppressive, unscrupulous or substantially injurious to

consumers."  *Hawaii Cmty. Fed. Credit Union v. Keka*, 94 Haw. 213,

228, 11 P.3d 1, 16 (2000) (quoting *State ex rel. Bronster v. U.S.*

*Steel Corp.*, 82 Haw. 32, 51, 919 P.2d 294, 313 (1996)).

The Counterclaim lacks facts that, if true, would

establish a plausible claim under section 480-2.  In particular,

the Counterclaim "does not contain any allegations concerning the

nature of the competition."  *Davis v. Four Seasons Hotel Ltd.*,

122 Haw. 423, 437, 229 P.3d 303, 317 (2010) ("[Plaintiffs] are

---

[4] Under Hawaii common law, to prevail in an action for unfair
competition, the plaintiff "must establish (1) the 'palming off'
of defendant's product as plaintiff's product, or (2) 'consumer-
confusion' between the two products because plaintiff's product
had acquired a secondary meaning or because of other reasons, or
(3) misappropriation of plaintiff's property or merchandise
through misrepresentation or some other form of commercial
immorality."  *Meridian Mortg.*, 109 Haw. at 49, 122 P.3d at 1147
(quoting *Barton Candy Corp. v. Tell Chocolate Novelties Corp.*,
178 F. Supp. 577, 583 (E.D.N.Y. 1959)).

required to alleged how [a defendant's] conduct will negatively

affect competition in order to recover on an unfair methods of

competition claim."). The factual allegation underlying Arthur's

unfair competition claim is very similar to that underlying the

tortious interference claim discussed above--i.e., Jacobsen's

untimely payments and stalling tactics negatively affected

Arthur's relationship with subcontractors and suppliers. This

allegation makes no mention of competition, let alone conduct

that is against public policy or potentially harmful to

consumers.

The court dismisses Count II for failure to plead

sufficient facts to support the unfair competition claim.

### C.   Count III (Breach of the Implied Covenant of Good Faith).

Arthur alleges that Jacobsen breached the implied

covenant of good faith "in all its contractual dealings with all

of its subcontractors, second-tier subcontractors and suppliers

for the Project," and that Arthur sustained damages to be proven

at trial."  ECF No. 26, PageID # 229.

The Counterclaim's factual allegations with respect to

Jaocbsen's alleged breach of the implied covenant of good faith

and fair dealing are speculative and conclusory.  Arthur

identifies no contracts or contracting parties, merely referring

to "all" Jacobsen's contractual dealings for the Project.  The

13

Counterclaim does not suggest that Arthur is party to any of these alleged contracts or even has standing to bring a claim under them. Such bare allegations fail to "give fair notice and . . . enable the opposing party to defend itself effectively." *See AE ex rel. Hernandez v. Cty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (quotation marks and citation omitted); *see also Cook v. Brewer*, 637 F.3d 1002, 1008 (9th Cir. 2011) ("[Plaintiff's] reliance on speculative and conclusory allegations is insufficient to state a facially plausible claim.").

Moreover, Arthur provides no legal basis for Count III. It is unclear whether he is attempting to bring a common law claim of breach of the "implied covenant of good faith and fair dealing [in every contract] that neither party will do anything that will deprive the other of the benefits of the agreement." *See Best Place v. Penn Am. Ins. Co.*, 82 Haw. 120, 123–24, 920 P.2d 334, 337–38 (1996) (citations omitted). Arthur might be trying to assert a bad faith tort cause of action. *See id.* at 131, 920 P.2d at 345; *Jou v. Nat'l Interstate Ins. Co. of Hawaii*, 114 Haw. 122, 129, 157 P.3d 561, 568 (Ct. App. 2007) ("[W]hether a breach of [the duty of good faith and fair dealings] will give rise to a bad faith tort cause of action depends on the duties inherent in a particular type of contract.").

14

This court need not decide on the present motion
whether Arthur can assert a viable claim of bad faith under the
sparse facts alleged here.  Any amended claim should identify
the legal basis supporting a claim of a breach of the implied
covenant of good faith and fair dealing.  *See* Fed. R. Civ. P.
8(a)(2) (requiring "a short and plain statement of the claim
showing that the pleader is entitled to relief").

The court dismisses Count III of the Counterclaim
because it fails to sufficiently allege a viable claim.

## V.        CONCLUSION.

Arthur's Counterclaim against Jacobsen is dismissed
under Rule 12(b)(6) for failure to state a claim upon which
relief can be granted.  Arthur is given leave to amend his
Counterclaim consistent with this order.  That is, he may file
amended claims of tortious interference with contractual
relations, unfair competition, or breach of the implied covenant
of good faith, and may add other claims.

Any amended counterclaim must comply with Rule 8 of
the Federal Rules of Civil Procedure.  It should clearly
identify the claim(s) being asserted and the factual bases for
each claim, and it must allege facts demonstrating what Jacobsen
did to harm Arthur with respect to each claim asserted.  This
document must be complete in itself; it may not incorporate by
reference anything previously filed with this court.  Any

15

amended counterclaim must be filed no later than December 31, 2018.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, December 5, 2018.



/s/ Susan Oki Mollway

Susan Oki Mollway
United States District Judge

JDS Construction, LLC v. Jacobsen Construction Company, Inc., et al., Civ. No. 18-00147 SOM-KSC; ORDER GRANTING DEFENDANT JACOBSEN CONSTRUCTION COMPANY, INC.'S MOTION TO DISMISS THIRD-PARTY DEFENDANT JAMES D. ARTHUR'S COUNTERCLAIM.